## JEREMIAH LORD *vs.* SEWALL F. BELKNAP.

An agreement was entered into, July 2d, 1841, between B. and C., by which it was agreed, that C. should construct and finish, in a specified manner, and to the acceptance of the engineers, on or before June 1st, 1842, a certain section of the P. S. & P. Railroad; that if the work should not be done within the time fixed, B. should assess such damage for the delay as he should think just and reasonable, and charge C. with the amount; that if it should at any time appear to B. or the engineers, that C. was not proceeding with sufficient speed, they might determine that the contract had been abandoned by C., in which case, the agreement on the part of B. should become null and void, and any balance which might otherwise be due to C. should be forfeited to B., who might thereupon con

Lord v. Belknap.

tract with others to finish the road; that if C. should not well and truly perform the agreement on his part, B. might dismiss him from the work, in which event, a like forfeiture should be incurred; that, in consideration of the fulfilment by C. of the agreement on his part, B. should pay him, for his labor, at the rates specified in the agreement, in monthly payments of three fourths of the amount of the work done, to be estimated by the engineer; and that when the whole section should be accepted, as completed agreeably to the contract, the balance should forthwith be paid to C.: On the 27th of December, 1841, C. drew an order in favor of L. on B., for $100, which B. accepted "to pay when due according to C.'s contract:" On or about the 1st of June, 1842, the contract was abandoned by C., either voluntarily, or by a dismissal according to its terms. In an action by the payee against the acceptor, to recover the amount of the order, it was held:

1. That the final payment was dependent, and could only be demanded upon the completion of the work:

2. That the monthly payments were independent, and became due at the end of each month:

3. That, if, at any time between the acceptance of the order and the abandonment of the work, the amount of the order was due on any monthly payment, the defendant became bound to pay according to the terms of the acceptance:

4. That, if the legal consequence of a dismissal or abandonment were a forfeiture of the balance due at the time to C., (of which the court gave no opinion,) such balance would not include money actually paid to C., according to the terms of the contract, or at C.'s request promised to be paid to another, without reference to such possible forfeiture.

THIS action was brought by the plaintiff, as the payee, against the defendant, as the acceptor, of an order drawn on him by Patrick Calpin, of which the following is a copy:

"$100.    North Berwick, December 27th, 1841.    S. F. Belknap, — Sir Please pay the bearer, Jeremiah Lord, of North Berwick, one hundred dollars, and charge the same to my account.  Patrick Calpin.  [Indorsed] Accepted to pay the within when due according to P. Calpin's contract.  S. F. Belknap, by Benj. S. Newhall.  Dec. 28, 1841."

It appeared, on the trial, which took place before *Wells*, C. J., in the court of common pleas, that, by articles of agreement, dated July 2d, 1841, it was agreed between the defendant, under the name of S. F. Belknap and company, and Calpin, the drawer of the order, that the latter, in consideration of the payments and covenants, to be made and performed by the former, should construct and finish, according to the descriptions and specifications contained and referred to in the agreement, a certain section of the Portland, Saco & Portsmouth Railroad, in the most substantial manner, in every respect, and to the satisfaction and acceptance of the resident engineers of the road.

The agreement contained also the following clauses:

"And the said section of the road shall be made and completed, as herein described, on or before the first day of June, 1842, and for a failure to make and complete the said section of road within the time fixed for its completion, said B. & Co. shall assess such damage as they may think just and reasonable, and charge said P. C. with the amount thereof, and the said B. & Co. may employ other help to hasten the completion of the work, within the said specified time, and the expense of such help shall be paid by the said C.

"And, in case it should appear to said engineers, or to said B. & Co., that the work has not proceeded or gone on with sufficient speed, they shall have power to determine that this contract has been abandoned, and, in the event of said determination, this agreement on the part of said B. & Co. shall become null and void, and any balance of money due shall be forfeited by said C. to said B. & Co., and the said B. & Co. shall have full right to contract with any person or persons in the stead of the said P. C., &c., for the completion of the said work, &c."

"In consideration of the fulfilment, by the said P. C., of the foregoing provisions of this contract, the said B. & Co. do hereby promise and agree, for doing and performing the work as aforesaid, to pay or cause to be paid to the said P. C., his, &c., for every cubic yard of earth, &c., in monthly payments of three fourths of the amount of the engineer's estimate, of work done.

"Provided always that said engineer shall decide on the quantity and quality of the excavation, and that his decision shall be final and conclusive. And when the whole of the section hereby contracted for shall have been accepted as completed agreeably to contract, the balance due shall forthwith be paid to the said C., his, &c. And the decision of said engineer, upon the admeasurement of the work to be executed under this contract, shall be conclusive. And it is hereby further agreed, that if the said P. C. shall not, on his part, well and truly perform all the covenants herein contained, said B. & Co. may dismiss him from the work, and then and in that event, this contract shall become null and void, and any balance for work done on said road, which would have been due to said P. C., shall be forfeited and become the right and property of the said B. & Co."

The plaintiff admitted, that the contract had been abandoned by Calpin, either voluntarily, or by a dismissal under the terms of the contract, on or about the first day of June, 1842, and that the work remaining unfinished had been performed by the defendant.

The plaintiff then offered further evidence, which was objected to by the defendant, on the ground, that no action would lie against him under and by the terms of the contract, until the final completion of the same by Calpin, and consequently, that nothing was due on the acceptance according to its terms.

24*

But the court decided, that further evidence was admissible, and that the defendant would be liable on the acceptance, provided the plaintiff could satisfy the jury, that a sufficient amount of funds, payable from the three quarters advanced payments provided for by the contract upon the engineer's estimates, over and above other liabilities assumed to be paid by the defendant, previous to the acceptance of the order, was, at any monthly settlement between the date of the, acceptance and the time of the abandonment of the contract by Calpin, in the hands of the defendant, unless the defendant could satisfy the jury, that the damage sustained by the abandonment exceeded the one quarter reserved by the terms of the contract.

The evidence, offered by the plaintiff, was thereupon admitted; and a verdict being rendered in his favor, the defendant filed exceptions.

*T. B. Pope*, for the defendant.

*F. B. Hayes*, for the plaintiff.

SHAW, C. J.    The plaintiff sues as the payee of an order for money, not negotiable, drawn by Patrick Calpin on the defendant, and specially or conditionally accepted by him. The order being general, the liability of the defendant depends upon the terms of his acceptance.    He accepts, to pay the amount drawn for, $100, when due according to Patrick Calpin's contract.    On reference to the contract, it appears to be an agreement by the drawer of the order, Patrick Calpin, to do the grading on a section of the Portland, Saco & Portsmouth Railroad, in the manner, and upon the terms, therein specified.

The contract, which was made in July, 1841, was, to complete the work by the first day of the ensuing month of June. Belknap stipulated, in consideration of the fulfilment, &c., to pay to Calpin three quarters of the estimated amount of the work, as it should be done, in monthly payments; and when the whole of the section contracted for should have been accepted, as completed agreeably to the contract, the balance due should be forthwith paid to Calpin.    It is further pro·

vided, that if, in the opinion of the engineer, the work should not proceed speedily enough, Belknap and company reserved a right to determine that the contract had been abandoned; in which case, the agreement should become null and void, and any balance of money due should be forfeited by Calpin to Belknap and company. So, in another part of the contract, it is stipulated, that if Calpin shall not well and truly perform all the covenants, &c., Belknap and company may dismiss him from the work, and then the contract shall become null and void, and any balance for work done, which would have been due to Calpin, shall be forfeited and become the right and property of Belknap and company.

It may be remarked, in passing, that this contract appears to have been made and executed by Belknap alone, but in behalf of himself and some other person or persons.

These are the parts of the contract, which bear upon the question of the defendant's liability on his qualified acceptance.

It was conceded by the plaintiff, that the contract had been abandoned by Calpin, either voluntarily, or by dismission under the terms of the contract, on or about the first of June, 1842, and that the unfinished work had been performed by the defendant.

By the defendant's qualified acceptance, he undertook to pay the plaintiff the $100, when due according to Calpin's contract. The defendant, upon the evidence, contended that by the terms of the contract, nothing was due to Calpin, until the final completion of the same, and that nothing was due to the plaintiff upon the acceptance, according to the terms of the contract.

The chief justice of the court of common pleas decided otherwise, and instructed the jury, that the defendant was liable upon his acceptance, if it should be proved to the jury, that a sufficient amount of funds, payable from the three quarters advanced payments, provided for in the contract, over and above other liabilities assumed to be paid by Belknap, previous to the acceptance of the order, at any

monthly settlement between the date of the acceptance and the time of the abandonment, was in the defendant's hands, unless the defendant could satisfy the jury, that the damage, sustained by reason of the abandonment of the contract, exceeded the one quarter reserved by its terms.

The court are of opinion, that this direction was sufficiently favorable to the defendant; and it may be doubtful, whether the last clause is not too much so, if, as we suppose, it referred to a damage occasioned by an abandonment after such quarterly payment became due.

The stipulation for the final payment was dependent, and could only be claimed after a completion of the work; but we think the monthly payments were independent.

Whether mutual stipulations are dependent and conditional, or independent, is sometimes a difficult question. But, where time is given for performance on one side, and payments are to be made on the other within such time, it is certain that the making of payments cannot depend upon a full and complete performance. Such were the terms of the contract; it was to be completed in June, and monthly payments of three quarters made in the mean time. The acceptance was given in December. If any work was done between that time and that when the abandonment took place, three quarters of the amount of the pay for such work became due and payable. We think, therefore, that the jury were rightly instructed, that, if, on any such monthly payment, there was $100 due, the defendant became bound to pay the plaintiff by the terms of his acceptance.

The evidence being properly left to the jury, upon a direction, which was right in point of law, the verdict for the plaintiff establishes the fact, that the amount stated was due by the contract, upon the stipulated monthly payments.

But it has been contended, that, by the terms of this contract, the subsequent abandonment of the work, or dismission of the contractor, operated as a forfeiture, not only of the one quarter part reserved to the final completion, but also of any unpaid balance due on the anterior monthly payments.

Certainly, a contract like this, providing for a dissolution and forfeiture, at the election of one party, is to be construed strictly, against such forfeiture. Penalties and forfeitures are not to be favored in law, or tolerated in equity.

But supposing, that, by the terms of the contract, on such dismissal, any balance, which would have been due to Calpin should be forfeited and become the property of Belknap, such balance would not include money actually paid, according to the terms of the contract, or at Calpin's request stipulated to be paid to another person, without regard to such possible forfeiture.

Besides, by the terms of the defendant's acceptance of Calpin's order, he became liable to pay the amount to the plaintiff, when so much should be due in cash upon any monthly payment. When that event happened, the plaintiff's right became complete and vested, and could not be affected by any subsequent default of Calpin. We think the directions were right.

*Exceptions overruled.*